Marsh v. Thompson.

No. 11,788.

MARSH v. THOMPSON.

VENDOR AND PURCHASER.— *Want of Title in Grantor.— When Purchase-Money can not be Withheld.*—Where a deed is made and accepted, and possession taken under it, want of title in the grantor will not enable the purchaser to resist the payment of the purchase-money, or recover more than nominal damages on his covenants, while he retains the deed and possession, and has been subjected to no inconvenience or expense on account of the defect of title.

SAME.—*Acceptance of Estate.—Estoppel.*—By the acceptance of an estate the party accepting is estopped from denying the title under which he holds.

PRACTICE.—*Failure to Assess Nominal Damages.*—A judgment will not be reversed because of a failure to assess or allow merely nominal damages.

From the Marshall Circuit Court.

*M. A. O. Packard* and *A. C. Capron,* for appellant.

*C. Kellison,* for appellee.

NIBLACK, J.—On the 11th day of April, 1883, Lemuel M. Thompson sold, and by warranty deed conveyed, to Martin V. Marsh two tracts of land in Marshall county, constituting together a farm, with buildings and improvements thereon, and containing an aggregate area of near ninety acres. The conveyance was made in consideration of the sum of $4,000. Marsh paid $2,000 in cash and assumed to pay a mortgage already upon the farm for about $1,500. For the remaining $500 he gave his promissory note, payable six months after date, and executed a mortgage on both tracts to secure its payment.

This suit was brought by Thompson against Marsh to obtain judgment upon the note given as above and to foreclose the mortgage executed as stated to secure its payment. One James Thompson was also made a defendant to answer as to some supposed interest held by him in the mortgaged property, but he made default, and no further notice was taken of him during the progress of the cause.

Marsh answered: First. That the note was given without any consideration whatever. Second. That the plaintiff had

no title to seventeen acres of the lands, for which the note was given in part payment, and that in consequence he, Marsh, had already paid more than the lands for which he had received a good title were worth. Third. By way of cross complaint, charging that the lands purchased from the plaintiff formerly belonged to one Adam Appelman, who, being still the owner thereof, died in 1877, intestate, leaving Hannah E. Appelman as his widow and three minor children, also the children of the said Hannah, all of whom still survive him; that not long after the death of the said Adam Appelman, the widow commenced partition proceedings against the said minor children, which resulted in having seventeen acres of the lands in question, estimated to be worth $1,800, set off to her in severalty; that the dwelling-house, barn, out-houses and orchard, embracing the most valuable part of the improvements belonging to the farm, were situate upon the seventeen-acre tract thus set off to the widow; that about the time the partition was made the widow intermarried with one John R. Covert, whose wife she still is; that afterwards, at a guardian's sale, the plaintiff became the purchaser and consequent owner of that part of the farm which had been set off to the minor children, which included all not taken by the widow; that the plaintiff thereupon also contracted with Hannah E. Covert the late widow, for the purchase of the seventeen-acre tract set off to her, and received from her and her present husband a deed of conveyance for the same; that these two purchases, and the conveyances made in pursuance of them, constituted the only claim of title which the plaintiff had to the lands conveyed by him to the defendant Marsh; that at the time of such conveyance the plaintiff represented that his title was perfect and complete, and that the defendant Marsh had reason to believe, and did believe, that it was entirely good until a short time before the commencement of this suit. Wherefore the defendant Marsh answered that the plaintiff never had any

title to the part of the land set off to the widow of Adam Appelman, and demanded that the plaintiff be enjoined from the further prosecution of this suit until he should first make good this defect in the title which he assumed to convey.

Demurrers were sustained to the second paragraph of the answer and to the cross complaint, and, Marsh declining to plead further, the circuit court, after hearing the evidence, rendered judgment against him for the amount of the note, and decreed a foreclosure of the mortgage, executed as herein above stated, to secure its payment.

Error is assigned upon the decision of the circuit court sustaining the demurrer to the second paragraph of the answer, as well as upon the similar ruling upon the cross complaint, and as the same facts are to some extent involved in both pleadings, the argument is addressed exclusively to the questions presented by the cross complaint.

As contended, this court has repeatedly held that a conveyance made by a former widow, under circumstances similar to those attending the conveyance from Mrs. Covert and her husband to the appellee, conveys no title to the grantee, and some of the cases go to the extent of holding that such former widow may, at any time, re-assert her title and right of possession to the land thus attempted to be conveyed away by her. *Vinnedge* v. *Shaffer*, 35 Ind. 341; *Nesbitt* v. *Trindle*, 64 Ind. 183; *Scott* v. *Greathouse*, 71 Ind. 581; *Smith* v. *Beard*, 73 Ind. 159; *Avery* v. *Akins*, 74 Ind. 283; *Connecticut M. L. Ins. Co.* v. *Athon*, 78 Ind. 10; *Miller* v. *Noble*, 86 Ind. 527.

The rigor of the rule prescribed by section 18 of the statute of descents, 1 R. S. 1876, p. 411, upon which the earlier cases rest, has been somewhat modified by having two provisions since annexed to it. See section 2484, R. S. 1881. The rights and liabilities of married women have, also, been enlarged in other respects within the past few years. A married woman may now be bound by an estoppel *in pais*, in the same manner, and to the same extent, as if she were not under

coverture. She is also now bound by her covenants of title in the conveyance of her separate property. See, also, sections 5117 and 5118, R. S. 1881.

Assuming that the deed executed by Mrs. Covert and her husband to the appellee was a warranty deed, it is claimed that the former is now estopped by her covenants of title from re-asserting any claim to the seventeen-acre tract of land in controversy, and that hence the appellant has a good title to that tract of land by estoppel during the life of Mrs. Covert. It is also claimed that as Mrs. Covert put the appellee in possession of the land set off to her under a deed purporting to convey full title, and thus seemingly conferred upon him the power to sell and convey that land to the appellant, she is now, also, estopped by her conduct from re-asserting any claim of her own to the land in question.

In the first place, the cross complaint did not charge that the deed from Mrs. Covert to the appellee was a warranty deed; we ought not, therefore, to assume that it was, or to decide anything upon the theory that it was a deed of that character. In the next place, all the facts necessary to raise the question of the alleged estoppel of Mrs. Covert by her conduct are not averred; nor is a consideration of that question essential to a proper decision of this cause.

It is either charged, or inferentially admitted, that the appellant is in possession of the entire Appelman farm under a warranty deed executed to, and accepted by, him from the appellee, and that this possession has never been disturbed, nor has he been put to any expense, by any claim of adverse title by or on behalf of Mrs. Covert.

As applicable to a similar state of facts, this court, in the case of *Small* v. *Reeves*, 14 Ind. 163, said: "Where a deed is made and accepted and possession taken under it, want of title will not enable the purchaser to resist the payment of the purchase-money, or recover more than nominal damages on his covenants, while he retains the deed and possession, and has been subjected to no inconvenience or expense on ac-

count of the defect of title. This is, in many of the cases, because the purchaser's possession, being under color of title, may continue undisturbed for twenty years, and thus become perfect, and he be uninjured. And he may rely on the covenants in his deed for redress, if injury occurs." This case has been approved and followed in many more recent cases, and has become a leading case on the subject embraced in the quotation we make from it. *Van Nest* v. *Kellum,* 15 Ind. 264; *Hacker* v. *Blake,* 17 Ind. 97; *Sumner* v. *Coleman,* 20 Ind. 486; *Hanna* v. *Shields,* 34 Ind. 84; *Beal* v. *Beal,* 79 Ind. 280; *Gibson* v. *Richart,* 83 Ind. 313. But it is insisted that the general principles recognized by the foregoing cases can not be made decisive of this case, because, under all the circumstances attending it, a period of forty years might elapse without extinguishing the adverse claim of the widow and all the children of Adam Appelman to that part of the farm which was set off to the widow.

In answer to that argument it may be said that the relief which may be afforded by lapse of time has only been given prominence in a class of cases, and then only in a rather incidental way. The doctrine announced as above in the case of *Small* v. *Reeves, supra,* really rests upon the broad and equitable principle that a purchaser of real estate ought not to be permitted to hold on to his deed and to the use and enjoyment of the premises, and, at the same time, resist the payment of the purchase-money. *Sebrell* v. *Hughes,* 72 Ind. 186.

No man is compelled to accept a defective title when he has bargained for or has reason to expect a good title, but if a defective title is accepted, and possession is taken under it, under circumstances which do not entitle the purchaser to a rescission, such purchaser has no claim for anything more than nominal damages until eviction, either actual or constructive, occurs.

It may be said generally that the relation which the purchaser of land not fully paid for bears to the vendor is the same in equity as that between landlord and tenant so far as

the doctrine of estoppel is involved. Bigelow Estop. (3d ed.), 428, and authorities there cited. By the acceptance of an estate, the party accepting is estopped from denying the title under which he holds. Co. Litt. 352a. A judgment will not be reversed because of a failure to assess or allow merely nominal damages. *Platter* v. *City of Seymour*, 86 Ind. 323.

Our conclusion, consequently, is that the cross complaint did not make a case for equitable relief of any kind in favor of the appellant; also, that no material injury was, in any event, inflicted upon the appellant by the sustaining of the demurrer to the second paragraph of his answer.

The judgment is affirmed, with costs.

Filed June 16, 1885.